UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

United States of America,  File No. 19-cr-224 (ECT/DTS)

      Plaintiff,

v.  **ORDER ACCEPTING REPORT AND RECOMMENDATION**

Travis Lee Beckjorden,

      Defendant.
_____

Defendant Travis Lee Beckjorden, charged with two counts of possession of a firearm by a felon arising from incidents that occurred February 28, 2019, and July 3, 2019, Indictment [ECF No. 1], objects to a Report and Recommendation [ECF No. 50] issued by Magistrate Judge David T. Schultz. Beckjorden objects to the Report and Recommendation to the extent it would, if accepted, deny his motions to suppress evidence obtained through searches on February 28, 2019, and July 3, 2019. ECF No. 55; *see* ECF Nos. 30, 31. The Report and Recommendation must be reviewed de novo pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.2(b)(3) to the extent of Beckjorden's objections. Based on that review, the Report and Recommendation will be accepted.

I[1]

Beckjorden first objects to Magistrate Judge Schultz's conclusion that law enforcement officers conducted a permissible investigatory stop on February 28, 2019, in

---

[1]     The facts relevant to Beckjorden's motions are set forth in detail in the Report and Recommendation and will not be repeated here. *See* R&R at 2–7.

accordance with *Terry v. Ohio*, 392 U.S. 1 (1968). Def.'s Obj. at 1–3. Beckjorden argues that officers did not perform a *Terry* stop but, rather, arrested him without probable cause when they handcuffed him as he left the Fleet Farm store. *Id.*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A law enforcement officer "may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (citing *Terry*, 392 U.S. at 30); *see United States v. Arvizu*, 534 U.S. 266, 273 (2002) (stating a reviewing court looks to the "totality of the circumstances" to determine the existence of reasonable, articulable suspicion). "There is no clear line between investigative stops and de facto arrests," but a *Terry* stop "may become an arrest, requiring probable cause, if the stop lasts for an unreasonably long time or if officers use unreasonable force." *United States v. Sanford*, 813 F.3d 708, 713 (8th Cir. 2016) (quotation omitted). "As part of a lawful *Terry* stop, officers may take any measures that are reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *United States v. Smith*, 648 F.3d 654, 659 (8th Cir. 2011) (quotations omitted); *see, e.g.*, *United States v. Davison*, 808 F.3d 325, 329 (8th Cir. 2015) (stating an officer may perform a "protective pat-down search" during a *Terry* stop if the officer has reasonable suspicion that the person "may be armed and presently dangerous" (quotation omitted)). Reasonable precautionary measures consistent with *Terry* may include handcuffing a suspect. *United States v. Martinez*, 462 F.3d 903, 907 (8th Cir.

2

2006). In evaluating the reasonableness of an officer's actions, "the issue is whether the officer has an objectively reasonable concern for officer safety or suspicion of danger." *Sanford*, 813 F.3d at 713 (quoting *Williams v. Decker*, 767 F.3d 734, 740 (8th Cir. 2014), *cert. denied*, 135 S. Ct. 1418 (2015)).

Here, law enforcement officers acted reasonably and consistent with *Terry* in handcuffing Beckjorden as he left the store. Prior to encountering Beckjorden, officers received information from a Fleet Farm loss-prevention employee that he had observed Beckjorden shoplift a hunting knife that he concealed on his person. Transcript at 8:14–12:11, 29:1–2. [ECF No. 46]. At the suppression hearing, Officer Lee, one of the responding officers, testified that he also had been informed that Beckjorden "possibly had two knives on his person." *Id.* at 28:1–8. This information provided officers with reasonable suspicion to conduct an investigatory stop and a reasonable need to protect themselves while doing so. Officer Lee's testimony that officers immediately handcuffed and pat-searched Beckjorden to "prevent any dangerous situations developing" reflects an objectively reasonable concern that Beckjorden's reported possession of the knives posed a potential danger. *See id.* at 29:25–30:11.

Beckjorden's reliance on *Hayes v. Florida*, 470 U.S. 811 (1985), to support his argument that the officers' actions constituted an arrest is misplaced. In *Hayes*, law enforcement officers transported a suspect from his home to a police station for fingerprinting without his consent, without probable cause, and without a warrant. *Id.* at 812–13. In concluding that the officers acted unlawfully, the Court explained that the line between investigative detention and arrest is crossed and the "full protection of the Fourth

and Fourteenth Amendments" is triggered "when the police, without probable cause or a warrant, forcibly remove a person from his home or other place in which he is entitled to be and transport him to the police station, where he is detained, although briefly, for investigative purposes." *Id.* at 815–16. Here, law enforcement officers stopped Beckjorden "in the field" for the purpose of investigating him for shoplifting. *See id.* at 816. The actions Beckjorden describes—being surrounded by officers, one of whom had a taser, being ordered to stop, drop the bag, and put his hands in the air, and being handcuffed—are distinguishable from *Hayes*, and Beckjorden does not otherwise explain how those actions necessarily constitute an arrest.

Accordingly, the actions of the responding officers did not transform their initial encounter with Beckjorden outside the store into an unlawful arrest. Rather, officers acted within the bounds of a lawful *Terry* stop when they handcuffed and pat-searched Beckjorden. Therefore, Beckjorden's motion to suppress evidence obtained through illegal search on February 28, 2019, will be denied.

II

Beckjorden also objects to the conclusion that the July 3, 2019 search of his pick-up truck was justified by the search incident to arrest and automobile exceptions to the Fourth Amendment's warrant requirement. Def.'s Obj. at 1, 4–6. Beckjorden argues that the search incident to arrest exception does not apply in his case because law enforcement officers did not have probable cause to arrest him and because he did not have access to the truck after his arrest. *Id.* at 4–6. Beckjorden further argues that neither exception applies because law enforcement officers did not have a sufficient basis to believe that the

firearm was in his truck at the time they stopped him, as they "did not know where [he] had gone, who had met him and whether he had disposed of the gun." *Id.* at 2, 5.

A

Probable cause to arrest an individual exists "if the facts and circumstances within the arresting officers' collective knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing . . . that the suspect has committed, is committing, or is about to commit an offense." *United States v. Taylor*, 519 F.3d 832, 834 (8th Cir. 2008) (quotations omitted). "Probable cause 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity'; it 'is not a high bar.'" *United States v. Perry*, 908 F.3d 1126, 1129 (8th Cir. 2018) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018)); *see Maryland v. Pringle*, 540 U.S. 366, 800 (2003) (stating probable-cause standard "deals with probabilities and depends on the totality of the circumstances").

Here, the totality of the circumstances shows that officers reasonably believed Beckjorden had committed a crime. Officer Swanson testified at the suppression hearing that he responded to a call from J.S., an employee of a tattoo parlor, who told him that Beckjorden had been at the parlor ten to twenty minutes earlier looking for the owner, brandished a black, semi-automatic pistol, and stated that he would return later. Transcript at 45:24–49:3, 54:16–55:1. J.S. also told Officer Swanson that Beckjorden drove a red Chevrolet pick-up truck. *Id.* at 50:2–4. Officer Swanson aired this information to dispatch. *Id.* at 51:18–20. A different officer subsequently aired the license plate of Beckjorden's vehicle and information that Beckjorden was a felon. *Id.* at 51:22–52:17. Another officer

5

went to the parlor owner's house and learned that the owner had seen a red truck, believed to be Beckjorden's, driving by his house close in time to when Beckjorden reportedly was at the tattoo parlor. *Id.* at 62:9–63:3, 64:21–66:1, 71:3–5. This information also was communicated to officers. *Id.* at 63:4–6. Beckjorden asserts that the information provided by J.S. was not trustworthy given the existence of an ongoing dispute between Beckjorden and the owner of the tattoo parlor. Def.'s Obj. at 4–5. But Beckjorden has not provided any evidence to show his assertion goes beyond speculation. Moreover, J.S.'s report was corroborated, at least in part, by the owner's observations. *See United States v. Winarske*, 715 F.3d 1063, 1067 (8th Cir. 2013); *United States v. Leppert*, 408 F.3d 1039, 1041 (8th Cir. 2005). Cumulatively, these circumstances establish that law enforcement officers had probable cause to arrest Beckjorden.

B

Pursuant to the Fourth Amendment, warrantless searches are *per se* unreasonable unless one of the carefully drawn exceptions applies. *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55 (1971). Under the "automobile exception," a warrantless search of a vehicle is justified when there is probable cause to believe that the automobile "contains contraband or evidence of criminal activity." *United States v. Shackleford*, 830 F.3d 751, 753 (8th Cir. 2016). Probable cause "may be based on the collective knowledge of all law enforcement officers involved in an investigation and need not be based solely upon the information within the knowledge of the officer on the scene if there is some degree of communication." *Id.* at 753–54 (quoting *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003), *cert. denied*, 541 U.S. 1081 (2004)). The permissible scope of a search under

6

the automobile exception is "defined by the object of the search and the places in which there is probable cause to believe that it may be found." *United States v. Ross*, 456 U.S. 798, 824 (1982).

Under the "search incident to arrest exception," a warrantless search of a vehicle is justified "only if (1) the arrestee is unrestrained and 'within reaching distance of the passenger compartment' when the search begins or (2) 'it is reasonable to believe the vehicle contains evidence of the offense of arrest.'" *United States v. Stegall*, 850 F.3d 981, 984 (8th Cir. 2017) (quoting *Arizona v. Gant*, 556 U.S. 332, 351 (2009)). In the latter situation, a search incident to arrest is permissible "[e]ven after an arrestee has been secured in the back of a police car," so long as the observations of officers "provide a reasonable basis to conclude that evidence of the crime of arrest might be found in the vehicle." *United States v. Allen*, 713 F.3d 382, 387 (8th Cir. 2013) (quotations omitted); *see Stegall*, 850 F.3d at 984–85 (explaining that the two parts of the *Gant* exception have "distinct rationales").

Here, officers had probable cause to believe that Beckjorden's vehicle contained evidence of criminal activity and a reasonable basis to conclude that it contained evidence specifically relevant to his arrest for second-degree assault and possession of a firearm by a felon. *See* Transcript at 69:13–17. Beckjorden's argument that the passage of time between the initial report that he possessed a gun and his arrest rendered any belief that the gun was still in the vehicle speculative is unavailing. Officers received information that Beckjorden continued to drive around in his vehicle after the incident at the tattoo parlor, and they subsequently observed him driving his truck for a significant period. *See*

*generally id.* at 62:9–63:6, 64:21–66:1, 70:18–73:5; Gov't Ex. 1. Once officers lawfully arrested Beckjorden, they found a loaded magazine in his pocket, which provided additional reason for officers to believe a firearm was in the truck. *See* Transcript at 74:12–75:8. Beckjorden's argument that the search of his truck cannot be justified as a search incident to arrest because he did not have access to his vehicle reflects a misunderstanding of *Gant* and was rejected in *Stegall*. Accordingly, the search of Beckjorden's vehicle on July 3, 2019, was lawful under both the search incident to arrest exception and the automobile exception, and his motion to suppress evidence obtained through that search will be denied.

### III

Neither party has objected to Magistrate Judge Schultz's recommendation that Beckjorden's motion to suppress statements made on February 28, 2019, be granted. Likewise, neither party has objected to Magistrate Judge Schultz's recommendation that Beckjorden's motion to suppress statements made on July 3, 2019, be denied. These recommendations will be adopted.

### ORDER

Based on the foregoing, and on all the files, records, and proceedings in the above-captioned matter, **IT IS ORDERED THAT**:

1. Defendant's Objections to the Report and Recommendation [ECF No. 55] are **OVERRULED**;

2. The Report and Recommendation [ECF No. 50] is **ACCEPTED**;

3. Defendant's Motion to Suppress Confessions, Admissions or Statements Made in the Nature of Confessions Made by the Defendant on February 28, 2019 [ECF No. 29] is **GRANTED**;

4. Defendant's Motion to Suppress Evidence Obtained Through Illegal Search on February 28, 2019 [ECF No. 30] is **DENIED**;

5. Defendant's Motion to Suppress Evidence Obtained Through Illegal Search on July 3, 2019 [ECF No. 31] is **DENIED**;

6. Defendant's Motion to Suppress Confessions, Admissions or Statements Made in the Nature of Confessions Made by the Defendant on July 3, 2019 [ECF No. 32] is **DENIED**; and

7. Pursuant to the March 13, 2020 administrative order of Chief Judge Tunheim, all trial-specific deadlines in this matter are continued through April 27, 2020. The Court finds that the ends of justice served by a continuance outweigh the public's and Defendant's interest in a speedy trial, as contemplated by 18 U.S.C. § 3161(h)(7)(A). The period from the date of this order to April 27, 2020, shall be excluded from the Speedy Trial Act computations in this case. The Court may extend the period of exclusion further if circumstances warrant.

Dated: March 23, 2020            s/ Eric C. Tostrud
                                            Eric C. Tostrud
                                            United States District Court